UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ROBERT N. SAMA,

        *Plaintiff*

                                          **COMPLAINT**

     - against -

THE FEDERAL RESERVE BANK
OF NEW YORK,                              **JURY TRIAL DEMANDED**

        *Defendant*
-------------------------------------------------------X

      Robert N. Sama ("Sama") by, and through, undersigned counsel, as and for his

Complaint, in this action against the Federal Reserve Bank of New York (the "FRBNY"),

respectfully sets forth and alleges as follows:

## PRELIMINARY STATEMENT

      1.     This is an action for employment discrimination based on Sama's age, in violation

of Federal, New York State, and New York City civil and human rights laws, as further described

herein. After over a decade of employment, the FRBNY unlawfully terminated Sama's

employment due to his advanced age and thereafter replaced him with a younger employee. Sama

had been a hardworking and loyal employee when the FRBNY abruptly, and with no warning,

unlawfully terminated his employment, against his will, solely because he was viewed as too old.

Data shows that older workers are particularly at risk of being pushed out of long-term positions.[1]

This is exactly what the FRBNY did to Sama as it did to other employees who the FRBNY forced

out as they advanced in age only to replace them with younger employees.

---

[1]     Peter Gosselin, *If You're Over 50, Chances Are the Decision to Leave a Job Won't be Yours*, PRO PUBLICA (Dec. 28, 2018, 5:00 AM), https://www.propublica.org/article/older-workers-united-states-pushed-out-of-work-forced-retirement.

## CLAIMS

2.     This action is brought to remedy discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S. Code § 623 (the "ADEA"), New York State Human Rights Law, N.Y. Executive Law §§ 290, et seq., (the "NYSHRL") and the Human Rights Law of the City of New York, Administrative Code of the City of New York §8-101 et seq. (the "NYCHRL").

## PARTIES

3.     Sama is a 69-year-old man who was employed at the FRBNY from February 2007 until his unlawful termination, on or about February 19, 2020. Sama is a resident of the State of New York. At all relevant times, he met the definition of "employee" under applicable statutes, cited herein.

4.     The FRBNY is a privately held corporation, whose main office is located at 33 Liberty Street, New York, NY 10045. The FRBNY employs approximately 3,500 individuals, at its locations in Manhattan, New York and East Rutherford, New Jersey.  The FRBNY is not a federal agency and its employees are not federal employees with the protections inherent therein. The FRBNY meets the definition of an "employer" under all applicable statutes, cited herein.

5.     At all times herein, Sama was an employee of the FRBNY and the FRBNY was Sama's employer, as these terms are defined under the ADEA, NYSHRL and NYCHRL.

## JURISDICTION AND VENUE

6.     Sama filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"), Charge No. 520-2020-03697, on or about May 18, 2020,

2

complaining of age discrimination. Sama has filed the instant Complaint within 90 days from receipt of a Notice of The Right to Sue, issued by the EEOC, on or about November 20, 2020.

7.      Pursuant to the NYCHRL, Sama served a copy of the Complaint on both the City of New York's Commission on Human Rights and its Corporation Counsel.

8.      The Court has jurisdiction over the ADEA claims, pursuant to 29 U.S.C. § 626(c) and 28 U.S.C. § 1331.

9.      The Court has supplemental jurisdiction over the NYSHRL and NYCHRL claims, pursuant to 28 U.S.C. § 1367.

10.     The FRBNY maintains its principal place of business in New York County, State of New York, in the Southern District of New York where Sama worked during times relevant to this Complaint and where the unlawful practices complained of herein occurred. Accordingly, venue is proper before the Court.

## FACTUAL ALLEGATIONS

11.     The Federal Reserve System (the "FRS") was created by Congress to assist in the regulation and supervision of monetary policies and exercise oversight of financial institutions. The FRS is comprised of 12 FRS Banks in its 12 Districts, located throughout the country, including the FRBNY which, like the other FRS Banks, is governed by the Washington D.C.-based FRS Board of Governors (the "BoG"). Under the direction of the BoG, the FRBNY, like other FRS Banks, assists the BoG in the implementation and enforcement of its initiatives and policies. Each FRS Bank maintains an on-site law enforcement command called a Law Enforcement Unit or "LEU".

12.     The FRBNY's LEU is comprised of uniform and plainclothes officers, who have some of the powers of conventional law enforcement officers, with the power to arrest and

detain, and are legally authorized to, and do, carry weapons. LEU officers provide protection and security for the FRBNY's personnel, information, assets, and facilities, in Manhattan and New Jersey. Unlike other law enforcement officers, however, LEU officers are generally prohibited from making an arrest off FRBNY premises, unless a crime of violence is committed in their presence, while they are at their assigned duty posts. Like all FRBNY employees, including Sama, LEU officers are not federal employees and do not have civil service protections for their employment. Subsequent to Sama's unlawful termination, in June 2020, the LEU officers unionized to press their collective bargaining rights with the FRBNY.

13.    When Sama's employment was unlawfully terminated, on February 19, 2020, he was Vice President of the FRBNY's LEU, having held this position since January 1, 2011. Sama joined the FRBNY in February 2007 and was promoted up through the ranks to be the LEU Vice President.

14.    Prior to joining the FRBNY, for over 29 years, Sama was a Special Agent with the Federal Bureau of Investigation (the "FBI"), retiring in February 2007. During the last five years of his tenure at the FBI, Sama served as the Program Manager/Assistant Special Agent-In-Charge of  the New York Office's Counter-Intelligence Division, responsible for handling Russia and China counterintelligence and espionage operations, utilizing his proficiency in the Russian language.  During his FBI career, Sama managed scores of personnel and was involved in some of the intelligence community's most successful counterintelligence and espionage investigations. These led to several high-priority arrests, for which Sama received professional recognition by awards from the FBI Director and U.S. Attorney General.

15.    As the LEU's Vice President, Sama oversaw LEU day-to-day operations and supervised approximately 100 officers, in both the FRBNY's Manhattan and New Jersey locations.

4

Sama's responsibilities included oversight of the LEU technical operations, involving infrastructure security, entry/exit surveillance, employee access, and threat and risk assessments. In addition, Sama was responsible for and supervised, LEU administrative components, including its Administration Program, budget, internal LEU FRBNY audits, BoG LEU reviews, and the FRBNY's Police Academy and In-Service Training Program. During his tenure at the FRBNY, Sama improved the efficiency and effectiveness of these operations. Based on his experience at the FBI and the years of managing the LEU, Sama was eminently qualified to occupy his position. No one ever questioned his ability or qualifications. In fact, Sama was held in the highest professional esteem and confidence by the FRBNY and its senior executives.

16.     The FRBNY's recognition of Sama's leadership skills, and its confidence in his expertise and professionalism, is illustrated by several episodes. In 2016, the FRBNY dispatched Sama, at the request and direction of its top-level executives, on a sensitive overseas mission, which successfully benefited the United States and certain of its citizens abroad. In 2019, at the request of the FRBNY's Human Resources Department, Sama gave a presentation on leadership to FRBNY employees it recognized as demonstrating the potential to be "future leaders" in its employ. In 2019, at the request of the FRBNY's Corporate Group, Sama gave a presentation to certain employees, on leadership, based on his experience in the FBI and LEU. Additionally, in 2019, the Directors of the BoG's Management Division and Operations and Payment Systems, requested that Sama provide "counterintelligence/threat landscape" briefings to BoG employees in Washington, D.C. and employees in the twelve FRS Banks. However, Sama's employment was terminated before he could provide the scheduled briefings. All of this supports that Sama was not fired for any other reason than his age.

17.     The LEU is part of the FRBNY's Law Department referred to, internally, as the "Legal Group." At the time of Sama's firing, he was the oldest employee in the Legal Group. Sama reported directly to David Gross, Esq., ("Gross") a Legal Group Senior Vice President. Gross, in turn, reported to Yoon Hi Greene, Esq., ("Greene") Deputy General Counsel and Senior Vice President in charge of Enforcement, Litigation and Investigations. Greene reported to Michael Held, Esq., ("Held") the FRBNY's General Counsel and head of the Legal Group.

18.     Held, Greene, and Gross were responsible for overseeing and enforcing BoG and FRBNY policies and directives pertaining to the LEU and its overall functioning and performance. Sama did not have the discretion to set the pay scale for the LEU officers or issue policies concerning their legal status and powers. LEU officer compensation was set by the FRBNY's management, excluding Sama, and the LEU's law enforcement powers were strictly prescribed, and limited, by the BoG, as augmented, overseen, and enforced by the Legal Group. Sama could not unilaterally impose discipline on LEU officers and could only do so, in consultation with, and approval by, Held, Greene and Gross.

**Sama's Performance Appraisals**

19.     The FRBNY's policies provided for a "Mid-Year Appraisal" and an "Annual Appraisal" for all employees, including Sama, wherein their work performance was evaluated and rated. Sama consistently received evaluations which indicated he performed at the highest performance levels. This was reflected in the award of salary increases and bonuses, as well as promotions to the Assistant Vice President and Vice President levels. Sama received no negative Appraisals, including his 2019 Mid-Year Appraisal. Sama was never given his Annual Appraisal for 2019 but received a bonus and salary increase for the year commencing January 1, 2020.

**Sama Receives a Lower Work Performance Rating Due to His Age**

20.    In December 2018, a significant and revealing conversation occurred between Sama and Gross, during a meeting regarding Sama's 2018 Annual Appraisal, which demonstrated the FRBNY's disparate treatment of Sama due to his age.

21.    At the meeting, Gross told Sama that he was giving him a "2" rating (with a rating of "1" being the highest rating) for his job performance in his 2018 Annual Appraisal. At the same time, Gross admitted that Sama's work performance actually merited a "1" rating. However, Gross explained that there was a limitation on how many "1" ratings were awarded to Legal Group employees. While Sama received the "2" rating, younger, similarly situated employees, in the Legal Group received a "1" rating.

**The FRBNY's Employee Disciplinary Procedure**

22.    The FRBNY maintained a Progressive Discipline Policy (the "PDP"), applicable to all its employees, including Sama. The PDP addressed unsatisfactory employee work performance and misconduct. The PDP provided for a three-step process in applying discipline up to, and including, suspension and termination. The first step was a "Documented Discussion" between the employee and supervisor wherein the employee was informed of the complained of issues and given support to address and correct them. The second step was an "Official Warning" wherein the employee had not satisfactorily corrected the complained of behavior and was warned of the potential of the imposition of disciplinary action should remediation not occur. The final step was a determination that the complained of conduct had not been abated and suspension or termination was necessary. Sama was never the subject of a PDP procedure. He never was engaged in a "Documented Discussion", received an "Official Warning" or suspended.

## The FRBNY Unlawfully Terminated Sama's Employment

23.     On February 19, 2020, Sama met with Gross.  During the meeting, Gross referenced a survey of the "morale" of LEU officers, conducted in 2019 by an outside consultant retained by the FRBNY, who issued a summary of protocols and findings (the "Report").

24.     Gross informed Sama that there were what he characterized as "negative" findings in the Report regarding LEU officer morale. Thereupon, Gross fired Sama on the spot and had him escorted out of the FRBNY by an executive from the FRBNY Human Resources Department, in front of LEU officers. The Report was characterized by errors, inaccuracies. and omissions. The issue of officer morale was never raised in Sama's Mid-Year and Annual Appraisals, nor was such an issue ever used previously to evaluate, measure, or rate his job performance. More significantly, as was well known by Held, Greene, Gross and the FRBNY, the primary complaint of the LEU officers was their level of compensation over which Sama had no control. Upon information and belief, the reason Gross gave for Sama's discharge was merely a cover and pretext for terminating Sama's employment based on his age.

25.     In summarily terminating Sama's employment, the FRBNY denied Sama the benefit and protection of its PDP. While the FRBNY so denied him, it accorded the benefits and protection of the PDP to FRBNY employees who were younger than Sama.

26.     Immediately after Sama was fired, on the same date, by the FRBNY's designation, LEU Captain Ronald Porter assumed Sama's major duties and responsibilities. Captain Porter is younger than Sama, did not have Sama's experience and tenure, had a lower compensation level, and was jumped three levels above his Captain's grade to handle Sama's LEU responsibilities. Sama's escorted ejection from the FRBNY and rushed replacement by Porter was officially announced by Gross that same day to those in the LEU who directly reported to Sama and an

assembly of LEU officers. The immediacy and opaqueness of this announcement suggested that Sama was fired for some type of misconduct when it was due to his age. This underscored the willfulness and reckless disregard by the FRBNY of the laws prohibiting age discrimination since younger FRBNY employees who left the FRBNY's employ were not treated in this manner.

27.     It was customary that when a Vice President or those above this management level left the FRBNY, there was a written announcement informing staff that the employee was leaving the FRBNY and thanking the employee for their service.  However, the FRBNY did not issue such an announcement for Sama. This glaring omission, and deviation from established practice, resulted in speculation and questions concerning Sama's termination, causing him embarrassment, humiliation, and damage to his professional reputation and constitutes further evidence of the FRBNY's disparate treatment of Sama due to his age.

28.     The FRBNY which has no mandated retirement age or policy, has persisted in a pattern of firing, or forcing out, employees over the age of 40 - most in their 50s and 60s - prior to their planned retirement. Several FRBNY employees were subject to this discriminatory and illegal treatment. When he was terminated, Sama enjoyed his job, felt he made a positive contribution to the FRBNY's goals and had no plans to retire from, or leave, his position at the FRBNY.

**<u>FIRST CLAIM</u>**
**AGE DISCRIMINATION IN VIOLATION OF THE ADEA**

29.     Sama repeats and realleges every allegation contained in Paragraphs 1 to 28 of this Complaint as if set forth fully herein and further states and alleges as follows:

30.     The FRBNY subjected Sama to disparate treatment and an adverse employment action, in violation of the ADEA, when it terminated his employment based on his age and replaced him with a younger employee.

9

31.    The FRBNY's violation of the ADEA was intentional, willful and in knowing disregard of the law.

32.    Sama suffered irreparable injury, economic harm, and monetary damage as a direct and proximate result of the FRBNY's unlawful discriminatory conduct, in violation of the ADEA, for which he is entitled to an award of monetary damages and other relief.

## SECOND CLAIM
## AGE DISCRIMINATION
## IN VIOLATION OF THE NYSHRL

33.    Sama repeats and realleges every allegation contained in Paragraphs 1 to 32 of this Complaint as if set forth fully herein and further states and alleges as follows:

34.    The FRBNY intentionally and willfully subjected Sama to disparate treatment and adverse employment actions in violation of the NYSHRL when it terminated his employment based on his age and replaced him with a younger employee.

35.    When the FRBNY terminated Sama's employment, it did so, in willful and wanton disregard of, and acted with malice and/or reckless indifference to, Sama's statutorily protected rights.

36.    Sama has suffered irreparable injury, economic harm, and monetary damage from the FRBNY's discriminatory conduct, in violation of the NYSHRL, for which he is entitled to an award of monetary damages and other relief.

## THIRD CLAIM
## AGE DISCRIMINATION IN VIOLATION OF THE NYCHRL

37.    Sama repeats and realleges every allegation contained in the Paragraphs 1 to 36 of this Complaint, as if set forth fully herein and further states and alleges as follows:

38.     Sama is a member of a protected class as the NYCHRL proscribes discrimination based on age.

39.     The FRBNY intentionally and willfully subjected Sama to disparate treatment and adverse employment actions, in violation of the NYCHRL, when it terminated his employment based on his age and replaced him with a younger employee.

40.     The FRBNY's termination of Sama's employment was done in willful and wanton disregard of Sama's rights and taken maliciously to injure him.

41.     Sama has suffered irreparable injury, economic harm, and monetary damage as a direct and proximate result of the FRBNY's unlawful discriminatory conduct, in violation of the NYCHRL, for which he is entitled to an award of monetary damages and other relief

## DEMAND FOR TRIAL BY JURY

42.     Sama demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, a trial by jury in this action.

## RELIEF SOUGHT BY SAMA

WHEREFORE, Sama, by this Complaint, seeks relief as follows, as against the FRBNY:

a)  an adjudication that the FRBNY has engaged in illegal age discrimination, and the actions and practices of the FRBNY, complained of herein, are violative of Sama's rights guaranteed and protected by the ADEA, NYSHRL, and NYCHRL;

b)  judgment in favor of Sama and against the FRBNY for all available remedies and damages under law and equity, including, but not limited to, the award of back pay, front

pay, compensatory, punitive and liquidated damages, in amounts to be determined at

trial;

c)  an award to Sama of attorneys' fees, costs, expenses, and expert witness fees; and

d)  the granting of such other and further relief as the Court may deem necessary and proper.

      Dated: New York, New York
              December 10, 2020

                                          Michael T. Cornacchia
                                          260 Madison Avenue, 22 Flr.
                                          New York, NY 10016
                                          (646) 278-4297
                                          mcornacchia@mtclegal.com
                                          *Attorney for Robert N. Sama*

                                          Carla Sanderson
                                          260 Madison Avenue, 22 Flr.
                                          New York, NY 10016
                                          (646) 499-3818
                                          carla@carlasandersonlaw.com
                                          *Attorney for Robert N. Sama*